THE UNITED STATES OF AMERICA DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRACY HENRY, ) | |
| ) | No. |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| J.P. MORGAN CHASE BANK, N.A., ) | |
| d/b/a CHASE, d/b/a CHASE HOME FINANCE, ) | |
| and its subsidiaries and affiliates, ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendant. ) | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes the Plaintiff, Tracy Henry, by and through her attorneys Daniel W. Ernsberger and BEHREND & ERNSBERGER, P.C. and files this Complaint in Civil Action and in support thereof, she avers as follows:

### Jurisdiction

1. This action is brought under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605 *et. seq*. As such, this court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Furthermore, this court may exercise supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367.

### The Parties

2. Plaintiff Tracy Henry is an adult individual and she resides in Allegheny County Pennsylvania.

3. Defendant J.P. Morgan Chase Bank, N.A., d/b/a Chase, d/b/a Chase Home Finance, is a Delaware Corporation headquartered at 270 Park Avenue, New York, New York 10017 and is registered and licensed to do business in Pennsylvania at 1635 Market St., Philadelphia, Pennsylvania, 19103.

1

4. Defendant J.P. Morgan Chase Bank, N.A. either by itself or through a subsidiary or affiliate is engaged in the business of residential mortgage servicing.

### Venue

5. The transactions and occurrences which give rise to this action occurred in Allegheny County, Pennsylvania.

6. Venue is proper in the Western District of Pennsylvania.

### Facts

7. Plaintiff Tracy Henry and her husband Joseph O. Henry (deceased) purchased their home at 1029 Barnsley Drive ("the home") in 1996.

8. Plaintiff purchased her home with a mortgage from Chase.

9. In 2009, Joseph Henry was laid-off from his employment.

10. The Plaintiff and her husband decided to re-finance the home when they fell behind on their taxes.

11. Plaintiff called Chase via telephone in November, 2009 about refinancing the home and spoke with a customer representative.

12. Chase agreed to refinance the home; the terms of the contract are in writing, however Plaintiff is not is possession of the contract, but believes, and therefore avers, that Defendant Chase is in possession of the refinancing documents.

13. On or about February 12, 2010, the Plaintiff agreed to refinance her home, at loan number *****7018 ("the 7018 loan").

14. Per the refinancing agreement, Chase was to be the loan service provider.

15. It was Plaintiff's understanding that the terms of the loan were as follows:

a. as the loan service provider, Chase was to collect payments for taxes, homeowner's insurance, principal, and interest, hold the tax and homeowner's payments in escrow, and pay the taxes and homeowner's insurance premium when due;

b. the principal amount of the loan included past due and current taxes and expenses;

c. Chase was to pay past due taxes and create an escrow fund for future taxes and expenses;

d. the monthly payment was to be $982;

e. a portion of the $982 monthly payment would be set aside in escrow to fund the payment of future taxes;

f. It is believed, and therefore averred, that all taxes on the property were current at the time the 7018 loan was closed.

16. Without warning, Chase raised Plaintiff's monthly payment to $1,015.24 in December, 2010. See Exhibit 1, Chase Detailed Transaction History for the period between February, 2010 and February, 2012.

17. On March 4, 2011, three disbursements in the amounts of $2,670.07, $778.32, and $436.64 for unidentified "delinquent" taxes were made by Chase out of Plaintiff's escrow account. See Exhibit 1.

18. The payment of the delinquent taxes caused a shortage in Plaintiff's escrow fund.

19. Plaintiff called Chase at (800) 848-9380 to request an explanation regarding the escrow shortage and her increased monthly fee.

20. Chase informed Plaintiff that the escrow account had been overdrawn but Chase was unable to provide Plaintiff with an explanation as to why the escrow account had been overdrawn.

21. On March 9, 2011, Chase provided Plaintiff with an "Annual Escrow Account Disclosure Statement" that compared a "prior year projection" of account activity with the "actual activity" in a table format. The table includes three rows entitled "taxes," in addition to rows labeled "county tax," "township tax," and "school tax." The "prior year projection" column shows a projected payment of $0 in the three rows entitled "taxes," but the "actual payments" column shows actual payments of $2,670.07, $778.82, and $436.64 in the three rows entitled "taxes" for the month of March, 2011. However, both the "prior year projection" and "actual payments" columns show dollar values in the "county tax," "township tax," and "school tax" rows. See Exhibit 2, March 9, 2011 statement.

22. Chase never specified what taxes it paid in March, 2011, and at the time of closing, Chase apparently did not recognize that taxes were outstanding or would be due in March, 2011. Regardless, Plaintiff's agreement with Chase was that outstanding taxes, if any, would be included in the principal of the 7018 loan.

23. It is believed, and therefore averred, that Chase failed to timely pay the unidentified taxes that it described as "delinquent taxes."

24. It is believed, and therefore averred, that Chase has passed on the costs of its failure to timely the taxes on Plaintiff's property to the Plaintiff in the form of fees and increased monthly payments.

25. On the date of closing, February 12, 2010, a report by the title insurance

company showed that homeowner's insurance had been paid in the amount of $582.07 on February 10, 2010, however on June 1, 2010, Chase paid $530.11 in homeowner's insurance costs. See Exhibit 1 and Exhibit 3, Title Insurer's Report.

26. It is believed, and therefore averred, that Chase mistakenly paid the homeowner's insurance twice in 2010 and raised Plaintiff's monthly payment to cover the escrow shortage caused by its mistake.

27. Plaintiff made a timely payment on August 15, 2011 of $1,015.24. See Exhibit 1.

28. It is believed, and therefore averred, that Chase did not correctly process Plaintiff's August 15, 2011 payment, because Chase incorrectly asserted that the payment Plaintiff made on September 15, 2011 was due on August 1, 2011, rather than September 1, 2011. See Exhibit 1.

29. Without warning, Chase raised Plaintiff's monthly payment rate from $1,015.24 to $1,298.83 in September, 2011. See Exhibit 1.

30. On October 22, 2011, Chase sent Plaintiff a letter informing her that her monthly payment had not been received and demanded a late payment of $32.32; however, Chase's detailed transaction history indicates that the required payment had been made on October 14, 2011. See Exhibit 4, October 22 letter and Exhibit 1.

31. The October 22, 2011 letter demonstrates Chase's mismanagement of Plaintiff's mortgage.

32. On December 6, 2011, Chase sent Plaintiff a letter informing her that her account was in default and Chase demanded a payment of $2,649.06. See Exhibit 5, December 6, 2011 letter from Chase to Plaintiff.

33. On December 16, 2011, at the demand of Chase, Plaintiff made a payment of $2,780 to bring the account current. See Exhibit 1.

34. On December 16, 2011, Plaintiff's monthly payment was reduced from $1,298.83 to $1,220.95. See Exhibit 1.

35. Chase assessed a late fee to Plaintiff on December 15, 2011 in the amount of $129.28, which was paid by Plaintiff on December 16, 2011. See Exhibit 6, December 16, 2011 statement.

36. On February 6, 2012, Chase sent Plaintiff a letter claiming that she was in default and demanded payment of $2411.90. See Exhibit 7, February 6, 2012 letter.

37. On February 17, 2012, Plaintiff made a payment of $3,456 to bring the account current, which included a late fee in the amount of $32.32. See Exhibit 1.

38. On February 13, 2012, Chase sent a letter to Plaintiff threatening foreclosure, even though Plaintiff had made her monthly payments and expressed her concern that Chase had made mistakes in the administration of her mortgage. See Exhibit 8, letter dated February 13, 2012.

39. Plaintiff then requested a loan history for both the 7018 loan and for her original loan from Chase and on February 21, 2012, Chase provided Plaintiff with a "detailed transaction history" for both the 7018 loan and her original loan. See Exhibit 1.

40. Upon receipt of the detailed transaction history, Plaintiff discovered Chase's mistakes regarding the so-called "delinquent taxes," the duplicate payments of the homeowner's insurance, the misapplied August 15, 2011 payment, the mismanagement of her account that was evidenced by the October 22, 2011 letter, and the following two transactions that were applied incorrectly and may have caused Plaintiff to incur additional fees:

      a. On December 16, 2011, a payment of $131.67 was applied to Principal Reduction instead of Escrow Shortage and,

      b. on February 17, 2012, a payment of $932.01 was applied to Principal Reduction instead of Escrow Shortage.

See Exhibit 1.

41. Chase reported adverse credit information about Plaintiff Tracy Henry by filing reports with three credit reporting agencies ("CRAs"): Equifax, Transunion, and Experian. Chase reported that Plaintiff was 30 days past due for the months of September, October, and November of 2011 with Equifax and Transunion, and that Plaintiff was 30 days past due for the months of September, October, November, and December of 2011 with Experian. See Exhibit 9, Equifax and Transunion Credit Reports and Exhibit 10, Experian Credit Report.

42. The detailed transaction history from Chase indicates that Plaintiff was never delinquent for any of the months that Chase reported to the CRAs that she was thirty days past due. See Exhibit 1.

43. The CRAs, in reliance on Chase's representations, lowered Plaintiff Tracy Henry's credit score.

44. Under the Real Estate Settlement Procedures Act (RESPA), any person with a mortgage can write a "qualified written request" to the mortgage lender and request and explanation of the mortgage when it is believed that the account is in error. 12 U.S.C. § 2605(e).

45. On or about May 15, 2012, the Plaintiff Tracy Henry mailed a "qualified written request" (QWR) to Chase. The QWR contained a clear statement of the borrower's name, account number, and reasons why the borrower believed the account was in error. Her QWR

asked for explanation as to why certain actions had been taken and her QWR suggested the remedy for Chase's mistakes. See Exhibit 11, Plaintiff's QWR to Chase.

46. Plaintiff Tracy Henry's QWR was mailed First Class, Certified with the United States Postal Service to Chase at 3415 Vision Drive, Columbus, OH 43219. See Exhibit 12, photocopy of both sides of the certified mail return receipt, which shows the date of mailing and address.

47. Chase received Plaintiff Tracy Henry's QWR on May 17, 2012. See Exhibit 12.

48. The delivery of Plaintiff Tracy Henry's QWR was signed for by one "Joe Cowans." See Exhibit 12.

49. RESPA requires that the lender acknowledge receipt of the QWR within 20 days of receipt.

50. Chase did not acknowledge Plaintiff Tracy Henry's QWR within 20 days of receipt of the QWR.

51. RESPA requires that the lender correct errors within 60 days of receipt of the QWR.

52. Chase did not correct the errors described by Plaintiff Tracy Henry, not did Chase provide Plaintiff Tracy Henry with a statement of reasons why the account is correct or cannot be serviced within 60 days of receipt of the QWR.

53. Chase has not communicated with Plaintiff Tracy Henry, since receiving her QWR on May 17, 2012.

54. Plaintiff Tracy Henry's negotiation with Chase and her QWR request to Chase proved to be fruitless.

55. In the time since filing her QWR, Plaintiff Tracy Henry has continued to suffer from anxiety that has physically manifested itself as weight loss and hair loss.

56. Moreover, Plaintiff is still paying the excess monthly charge and coping with the lowered credit score, lowered credit limit, and higher interest charges.

57. Plaintiff Tracy Henry was denied a parent's student loan, which caused her daughter to be financially unable to attend the college of her choice, West Virginia University.

58. Chase's threats of default and foreclosure were extremely stressful to Plaintiff, because Plaintiff had complied with the terms of her loan and did not understand why Chase continued to attack her and her family.

59. In the time since filing her QWR, Plaintiff Tracy Henry has continued to suffer actual damages in the following respects:

> a. she has seen a therapist to cope with stress, a psychiatrist to address anxiety, she has lost weight due to stress, and her hair began falling out;
>
> b. she is still paying the excess monthly charge and coping with the lowered credit score, lowered credit limit, and higher interest charges;
>
> c. Plaintiff Tracy Henry has spent significant time on the phone discussing the issue with Chase; and,
>
> d. she has taken time off of work to discuss the issue with Chase.

## COUNT I
## VIOLATIONS OF RESPA
## HENRY V. CHASE

60. Plaintiff hereby incorporates all of the above pleaded paragraphs as if fully set forth herein.

61. The Real Estate Settlement Practices Act (RESPA) applies to federally related mortgage loans, which include subordinate liens and loans used to pay-off an existing loan secured by the same property.

62. The transactions described herein involve a federally regulated mortgage loan.

63. RESPA prohibits mortgage servicers from taking unearned fees. 12 U.S.C. § 2607(b).

64. Chase willfully violated RESPA's prohibition of unearned fees by charging Tracy Henry late fees, despite the fact that Tracy Henry had not missed a payment.

65. RESPA allows borrowers to inquire about the status of the account and to dispute their account by following the statutory requirements of a Qualified Written Request. 12 U.S.C. § 2605(e).

66. Plaintiff Tracy Henry's QWR clearly complied with all of the statutory requirements located at 12 U.S.C. § 2605(e)(1)(B). To wit:

> a. the QWR clearly stated Tracy Henry's name;
>
> b. the QWR clearly stated the account number (*****7018);
>
> c. the QWR clearly stated the date of closing (February 12, 2010); and,
>
> d. the QWR was a separate mailing and was not a payment coupon or other payment medium supplied by Chase.

67. RESPA requires that a mortgage servicer acknowledge receipt of a QWR within twenty days (12 U.S.C. § 2605(e)(1)(A)) and substantively respond to a QWR within sixty days. 12 U.S.C. § 2605(e)(2).

68. Chase knowingly and willfully violated RESPA in that Chase did not:

    a. Comply with RESPA's twenty day acknowledgment requirement;

    b. Comply with RESPA's sixty day response requirement;

    c. Correct the Plaintiff's account and transmit written notification of such correction to the Plaintiff (12 U.S.C. § 2605(e)(2)(A);

    d. Provide Plaintiff with the information requested or notify them that the information was available (12 U.S.C. § 2605(e)(2)(C)(ii); and,

    e. Provide Plaintiff with the name and telephone number of an individual who could assist her (12 U.S.C. § 2605(e)(2)(C)(ii).

69.     Tracy Henry has suffered actual damages as a result of Chase's failure to comply with RESPA, including, but not limited to, the following:

    a. emotional distress, including hair loss and weight loss;

    b. monthly mortgage payments that were in excess of the originally agreed upon rate;

    c. lower credit score;

    d. higher interest rate on credit cards;

    e. illegally charged late fees;

    f. lost income by way of interest payments lost when excess payments were made to Chase;

    g. time away from work addressing the mistake;

    h. time spent on the phone with Chase; and,

    i. fees in preparation of the QWR.

WHEREFORE, Plaintiffs request that this Honorable Court award actual damages,

statutory damages, exemplary/punitive damages, award costs and attorney fees, and all other remedies deemed appropriate.

## COUNT II
## BREACH OF CONTRACT
## HENRY V. CHASE

70. Plaintiff hereby incorporate by reference all of the above paragraphs as if fully set forth herein.

71. The agreement between the parties as set forth herein constituted an enforceable contract.

72. The contract between the parties is in writing and it is believed, and therefore averred, that Chase is in possession of the written contract.

73. Plaintiff performed fully under the contract, or cured any defect, and were entitled to full performance by Chase.

74. Pursuant to the terms of the contract, Chase had a duty to correctly administer Tracy Henry's mortgage.

75. Chase has breached its duties pursuant to the terms of the contract by:

    a. wrongfully attributing a breach (default) to Plaintiff that was actually caused by Chase;

    b. assessing late fees and penalties to Plaintiff for the breach caused by Chase;

    c. increasing Plaintiff's monthly payment under the mortgage under a false pretense;

    d. maintaining inaccurate records of Plaintiff's account;

    e. incorrectly applying Plaintiff's payments;

  f. claiming that Plaintiff was in default because Chase incorrectly applied Plaintiff's payments; and,

  g. willfully misstating the payment history to third party credit reporting agencies in retaliation for the incorrect assignment of Plaintiff's payment that was actually caused by Chase.

76.  Chase failed to act with good faith towards Plaintiffs by failing to correct the incorrect application of Plaintiffs' mortgage payments.

77.  Plaintiff has suffered damages as a result of Chase's breach of contract, including, but not limited to, the damages listed in paragraph 69 of this Complaint.

WHEREFORE, Plaintiff requests that this Honorable Court award actual damages, statutory damages, exemplary/punitive damages, award costs and attorney fees, and all other remedies deemed appropriate.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## HENRY V. CHASE

78.  Plaintiff hereby incorporate by reference all of the above paragraphs as if fully set forth herein.

79.  Chase engaged in the following extreme and outrageous actions:

  a. threats of foreclosure;

  b. failure to respond to Tracy Henry's QWR; and,

  c. defamation of Plaintiff's good name to the CRAs.

80.  Following receipt of Tracy Henry's QWR, Chase was on notice that there was a

mistake in the loan. Rather than address the issue, Chase instead decided to ignore Tracy Henry.

81. Chase acted intentionally, with malice, and without regard of the possible consequences to Plaintiff.

82. Chase's abusive conduct has directly and proximately caused severe emotional distress, which has included loss of weight, loss of hair, and anxiety.

WHEREFORE, Plaintiff requests that this Honorable Court award actual damages, statutory damages, exemplary/punitive damages, award costs and attorney fees, and all other remedies deemed appropriate.

## COUNT IV
## DEFAMATION (LIBEL)
## HENRY V. CHASE

83. Plaintiff hereby incorporate by reference all of the above paragraphs as if fully set forth herein.

84. Chase's written publications of information regarding Plaintiff's credit history was false and defamatory.

85. Chase's written publication regarding Plaintiff's credit history was made willfully and with malice.

86. Chase knew, or should have known, that the information contained in its reports to the CRAs regarding Plaintiff Tracy Henry was false.

87. Chase knew, or should have known, that reporting false information to a CRA would cause Plaintiff to suffer the adverse effects of a lower credit score.

88. Chase knew, or should have known, that a consumer's credit score is a common measure of that consumer's reputation for creditworthiness among creditors.

89. Plaintiff has suffered actual damages as result of Chase's publication of false and defamatory credit information, including, but not limited to, rejection of an application for a parent's student loan, increased interest rate on a credit card, decreased credit limit on a credit card, and a decline in her credit score, which signals to creditors that she is not creditworthy.

WHEREFORE, Plaintiff requests that this Honorable Court award actual damages, statutory damages, exemplary/punitive damages, award costs and attorney fees, and all other remedies deemed appropriate.

## COUNT V
## CONSUMER PROTECTION LAW
## HENRY V. CHASE

90. Plaintiff hereby incorporates by reference all paragraphs above as if fully set forth herein.

91. The facts alleged in this Complaint demonstrate that Chase engaged in conduct proscribed by the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. 201 *et. seq*.

92. Throughout the course of the refinancing period and subsequent QWR period, Chase engaged in "fraudulent or deceptive conduct which create[d] a likelihood of confusion or of misunderstanding." 73 P.S. 201-2 (4)(xxi).

93. On multiple occasions, Chase informed Plaintiff that her account was in default, without explanation.

94. Chase demanded that Plaintiff pay additional sums to bring her account current, even though her account, if correctly accounted for, was already current

95. In her telephone conversations with Chase, Chase was unable to explain to

Plaintiff why her account was not current, why her monthly payment rate had increased, and why she owed significantly larger payments than her monthly payment rate in December, 2011 and February, 2012.

96. Plaintiff made the additional payments to prevent Chase from initiating an action in foreclosure.

97. Plaintiff Tracy Henry suffered actual damage as a result of Chase's conduct, including the damages listed in Paragraph 69 of this Complaint.

WHEREFORE, Plaintiff requests that this Honorable Court award actual damages, statutory damages, exemplary/punitive damages, award costs and attorney fees, and all other remedies deemed appropriate.

Respectfully Submitted,
BEHREND & ERNSBERGER, P.C.

David C. Weber
Pa. ID 311767
Attorney for Plaintiffs